RECORD NUMBER: 09-1124

# United States Court of Appeals
*for the*
# Fourth Circuit

**BJ ENERGY LLC, FRANKLIN POWER LLC, GLE TRADING LLC, OCEAN POWER LLC, PILLAR FUND LLC and ACCORD ENERGY LLC,**

*Plaintiffs-Appellants,*

– v. –

**OLD DOMINION ELECTRIC COOPERATIVE,**

*Movant-Appellee,*

**PJM INTERCONNECTION, L.L.C.,**

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

# OPENING BRIEF OF APPELLANTS

**DAVID B. TULCHIN**
  *Counsel of Record*
**MATTHEW S. FITZWATER**
**SULLIVAN & CROMWELL LLP**
**125 Broad Street**
**New York, New York 10004**
**(212) 558-4000**

**RACHEL GOLDSTEIN**
**GARY & REGENHARDT PLLC**
**8500 Leesburg Pike**
**Suite 7000**
**Vienna, Virginia 22182**
**(703) 848-2828**

*Counsel for Appellants*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>09-1124</u>        Caption: <u>BJ Energy LLC et. al. v. PJM Interconnection, L.L.C.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Accord Energy LLC</u>   who is <u>Appellant</u>,
(name of party/amicus)            (appellant/appellee/amicus)

makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    ☐ YES        ☑ NO

2.  Does party/amicus have any parent corporations?
    ☐ YES        ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
    ☐ YES        ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
    ☐ YES        ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
    ☐ YES        ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?
    ☐ YES        ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:


<u>/s/ Rachel J. Goldstein</u>                    <u>February 3, 2009</u>
(signature)                                              (date)

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>09-1124</u>         Caption:   <u>BJ Energy LLC et. al. v. PJM Interconnection, L.L.C.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>BJ Energy LLC</u>        who is       <u>Appellant</u>        ,
  (name of party/amicus)             (appellant/appellee/amicus)

makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    ☐ YES          ☑ NO

2.  Does party/amicus have any parent corporations?
    ☐ YES          ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
    ☐ YES          ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
    ☐ YES          ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
    ☐ YES          ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?
    ☐ YES          ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:


<u>/s/ Rachel J. Goldstein</u>                    <u>February 3, 2009</u>
      (signature)                                      (date)

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. <u>09-1124</u>          Caption: <u>   BJ Energy LLC et. al. v. PJM Interconnection, L.L.C.   </u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>   Franklin Power LLC   </u> who is <u>      Appellant      </u>,
   (name of party/amicus)       (appellant/appellee/amicus)

makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
     ☐ YES          ☑ NO

2.  Does party/amicus have any parent corporations?
     ☐ YES          ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
     ☐ YES          ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
     ☐ YES          ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
     ☐ YES          ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?
     ☐ YES          ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

<u>   /s/ Rachel J. Goldstein   </u>                    <u>   February 3, 2009   </u>
     (signature)                            (date)

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 09-1124      Caption:   BJ Energy LLC et. al. v. PJM Interconnection, L.L.C.

Pursuant to FRAP 26.1 and Local Rule 26.1,

___ GLE Trading LLC ___ who is _____ Appellant _____,
(name of party/amicus)          (appellant/appellee/amicus)

makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    ☐ YES          ☑ NO

2.  Does party/amicus have any parent corporations?
    ☐ YES          ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
    ☐ YES          ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
    ☐ YES          ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
    ☐ YES          ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?
    ☐ YES          ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:


___ /s/ Rachel J. Goldstein ___          ___ February 3, 2009 ___
(signature)                              (date)

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. __09-1124__    Caption: ___ BJ Energy LLC et. al. v. PJM Interconnection, L.L.C. ___

Pursuant to FRAP 26.1 and Local Rule 26.1,

___Ocean Power LLC___ who is _____Appellant_____,
(name of party/amicus)         (appellant/appellee/amicus)

makes the following disclosure:

1.   Is party/amicus a publicly held corporation or other publicly held entity?
         [ ] YES          [✓] NO

2.   Does party/amicus have any parent corporations?
         [ ] YES          [✓] NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
         [ ] YES          [✓] NO
     If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
         [ ] YES          [✓] NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)
         [ ] YES          [✓] NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?
         [ ] YES          [✓] NO
     If yes, identify any trustee and the members of any creditors' committee:


___/s/ Rachel J. Goldstein___          ___February 3, 2009___
(signature)                              (date)

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. <u>09-1124</u>          Caption:    <u>BJ Energy LLC et. al. v. PJM Interconnection, L.L.C.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>    Pillar Fund LLC    </u> who is <u>        Appellant        </u>,
    (name of party/amicus)          (appellant/appellee/amicus)

makes the following disclosure:

1.    Is party/amicus a publicly held corporation or other publicly held entity?
      [ ] YES          [✓] NO

2.    Does party/amicus have any parent corporations?
      [ ] YES          [✓] NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
      [ ] YES          [✓] NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
      [ ] YES          [✓] NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)
      [ ] YES          [✓] NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?
      [ ] YES          [✓] NO
      If yes, identify any trustee and the members of any creditors' committee:


<u>    /s/ Rachel J. Goldstein    </u>          <u>    February 3, 2009    </u>
      (signature)                    (date)

# **TABLE OF CONTENTS**

Page

CORPORATE DISCLOSURE STATEMENTS

STATEMENT OF JURISDICTION............................................................1

STATEMENT OF THE ISSUE..................................................................3

STATEMENT OF THE CASE....................................................................3

STATEMENT OF THE FACTS ................................................................6

SUMMARY OF ARGUMENT ..............................................................12

ARGUMENT ........................................................................................13

    Standard of Review.......................................................................13

    Discussion ....................................................................................13

    This Court Should Reverse the District Court's Decision to
    Impose Sanctions on Appellants for Serving, and then Agreeing
    to Narrow, a Subpoena ................................................................13

CONCLUSION ......................................................................................18

REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVIC E

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## Cases

*Cohen* v. *Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949)................................................................... 2

*Colonial Penn Ins. Co.* v. *Coil*,
  887 F.2d 1236 (4th Cir. 1989) ........................................... 6

*Flanagan* v. *Wyndham Int'l*,
  231 F.R.D. 98 (D.D.C. 2005)................................................. 14

*Guy Chem. Co.* v. *Romaco AG*,
  243 F.R.D. 310 (N.D. Ind. 2007)......................................... 14

*Jewish War Veterans* v. *Gates*,
  506 F. Supp. 2d 30 (D.D.C. 2007)....................................... 14

*Linder* v. *Calero-Portcarrero*,
  180 F.R.D. 168 (D.D.C. 1998)............................................... 16

*Mattel Inc.* v. *Walking Mountain Prod.*,
  353 F.3d 792 (9th Cir. 2003) ............................................13

*Nicholas* v. *Wyndham Int'l, Inc.*,
  373 F.3d 537 (4th Cir. 2004) ................................................ 2

*Virmani* v. *Novant Health, Inc.*,
  259 F.3d 284 (4th Cir. 2001) ............................................... 16

## Statutes and Rules

18 U.S.C. § 1962...........................................................................4

28 U.S.C. § 1291 .......................................................................... 2

Fed. R. Civ. P. 34 ...................................................................... 13

-ii-

## <u>TABLE OF AUTHORITIES</u>
(Continued)

<u>Page(s)</u>

Fed. R. Civ. P. 45 ................................................................................. *passim*

**Other Authorities**

9 Moore's Federal Practice ¶ 45.03 ...................................................... 14

No. 09-1124

IN THE

# *United States Court Of Appeals*

FOR THE FOURTH CIRCUIT

BJ ENERGY LLC, FRANKLIN POWER LLC, GLE
TRADING LLC, OCEAN POWER LLC, PILLAR FUND
LLC and ACCORD ENERGY LLC,

*Plaintiffs-Appellants*,

— v. —

OLD DOMINION ELECTRIC COOPERATIVE,

*Movant-Appellee*,

PJM INTERCONNECTION, L.L.C.,

*Defendant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

**BRIEF OF APPELLANTS BJ ENERGY LLC, FRANKLIN POWER LLC,
GLE TRADING LLC, OCEAN POWER LLC, PILLAR FUND LLC
AND ACCORD ENERGY LLC**

## STATEMENT OF JURISDICTION

BJ Energy LLC, Franklin Power LLC, GLE Trading LLC, Ocean

Power LLC, Pillar Fund LLC and Accord Energy LLC (collectively, the "Trading

Funds") appeal an order of the United States District Court for the Eastern District

of Virginia (Williams, J.) requiring them to pay attorney's fees to Old Dominion

Electric Cooperative ("ODEC" or "Appellee") on account of a subpoena served on

ODEC under Federal Rule of Civil Procedure 45.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the district court's ruling requiring the Trading Funds to pay attorney's fees was a final decision that resolved the proceeding (*i.e.*, ODEC's motion to quash the subpoena). The subpoena was served in the aid of litigation pending in the Eastern District of Pennsylvania and the District of Delaware, as described in more detail below. The district court's order requiring the Trading Funds to pay attorney's fees finally resolved the only issues before it. As such, it was a "final decision" under 28 U.S.C. § 1291.

Alternatively, this Court has jurisdiction under the collateral order rule, under which an appeals court has jurisdiction over an interlocutory decision by a district court that "(1) conclusively determines the issue before the lower court, (2) resolves an important question independent of the subject matter of the litigation, and (3) is effectively unreviewable on appeal from a final judgment in the case." *Nicholas* v. *Wyndham Int'l, Inc.*, 373 F.3d 537, 541 (4th Cir. 2004) (citing *Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). The district court's order (a) conclusively determined that the Trading Funds would be required to pay attorney's fees to ODEC for having made its motion to quash the Trading Funds' subpoena, (b) was independent of the subpoena's requirement to produce certain documents and (c) would be effectively unreviewable but for this appeal.

-2-

## STATEMENT OF THE ISSUE

Did the district court properly award attorney's fees under Federal Rule of Civil Procedure 45(c) where the party issuing the subpoena made significant efforts to narrow the subpoena and thereby greatly reduced the burden on the recipient of the subpoena?

## STATEMENT OF THE CASE

The Trading Funds are currently engaged in litigation against PJM Interconnection, L.L.C. ("PJM"), a Delaware limited liability company, in the Eastern District of Pennsylvania (the "Pennsylvania Action") and the District of Delaware (the "Delaware Action"). Both cases arise from losses incurred by Power Edge LLC ("Power Edge") in 2007 and 2008 in connection with electricity derivative trades it made on PJM's market. Power Edge—which is a separate legal entity that is affiliated with appellants—was declared in default by PJM in December 2007, and its unpaid losses are said to amount to about $50 million. In January 2008, PJM seized more than $35 million in trading revenues and excess collateral belonging to the Trading Funds on the ground that they should be responsible for the default of Power Edge, their sister company. No rule in PJM's Tariff or Operating Agreement so provides. Moreover, at the time PJM seized the $35 million, it asked its regulator, the Federal Energy Regulatory Commission ("FERC"), to approve a rule change that would have allowed PJM to seize that

money.  In March 2008, FERC rejected that proposed new rule, finding that it was neither just nor reasonable for PJM "automatically [to] take[] the profits of one affiliate to offset against the losses of another separate corporate entity."  Order on Tariff Revisions, 122 FERC ¶ 61,279, 62,644 (Mar. 25, 2008).  PJM nevertheless refused to return the money.

In the Eastern District of Pennsylvania action, the Trading Funds complain that PJM improperly seized their $35 million and that Power Edge's default gives PJM no lawful basis to hold the Trading Funds' property.  In the District of Delaware action, PJM—on behalf of its members—sued Power Edge, the Trading Funds and other affiliated entities and persons, seeking to hold all of them responsible for Power Edge's default under, among other things, the federal RICO statute, 18 U.S.C. § 1962.

ODEC, an electric generation and transmission cooperative, is a member of PJM that publicly supported PJM's position against the Trading Funds.  The Trading Funds served ODEC with a subpoena on October 20, 2008, requesting that ODEC produce documents concerning PJM's handling of Power Edge's default and PJM's decision to withhold the Trading Funds' monies, including any relevant communications between PJM and ODEC.  (JA 34-43.)[1]

---

[1] References to the Joint Appendix are abbreviated as "JA __."

On November 10, 2008, ODEC (a) served objections to the subpoena that averred, *inter alia*, that compliance costs would likely exceed $200,000 and (b) moved to quash or modify the subpoena. (JA 6-21; 22-54.) During the following week, the Trading Funds negotiated with ODEC and agreed to substantially narrow the subpoena. (JA 87-89.) On November 17, ODEC demanded that the Trading Funds place $15,000 in escrow to cover the costs of compliance, nearly all of which consisted of the cost of review by attorneys. (JA 91-92.) The Trading Funds declined, stating that no Federal Rule of Civil Procedure requires a party to place into escrow the subpoenaed party's projected cost of compliance. (JA 94-96.) The Trading Funds filed their opposition to ODECs's motion to quash or modify the subpoena on November 24, and ODEC replied on December 1. On January 9, 2009, the District Court (Williams, J.) granted ODEC's motion insofar as requiring the Trading Funds (1) to escrow $15,000 for the costs of compliance with the subpoena and (2) to pay ODEC's attorney's fees for bringing its motion to quash or modify.

It was error for the district court to award attorney's fees for ODEC's motion to quash or modify, where the Trading Funds negotiated in good faith to narrow the scope of the nonparty subpoena at issue and ODEC filed a motion to quash while the parties were still negotiating the scope of the subpoena. Rule 45(c) authorizes the imposition of "reasonable attorney's fees" on parties who fail

-5-

to comply with the requirement that the party serving the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The Trading Funds complied with Rule 45 by significantly limiting their subpoena so as to ameliorate the burden on ODEC, necessarily precluding the imposition of attorney's fees under the plain language of the Rule.

## STATEMENT OF THE FACTS

In May 2007, Power Edge acquired a portfolio of electricity transmission derivatives on PJM's market. (Pennsylvania Am. Compl. ¶ 20.)[2] The Trading Funds, which are separate legal entities under Delaware law, are affiliated with Power Edge and also traded electricity transmission derivatives on PJM's market. (*Id.* at ¶¶ 3-4.) In December 2007, Power Edge incurred large losses and defaulted as a result of unanticipated outages in certain electricity transmission lines and other factors. (*Id.* at ¶ 4.) On January 18, 2008, PJM asked FERC for a retroactive rule change, the effect of which would allow PJM to seize monies (trading revenues and collateral held by PJM) belonging to the Trading Funds. (*Id.*

---

[2]      All citations to the Pennsylvania action will be to the First Amended Complaint filed on November 7, 2008. *See BJ Energy LLC, et al.* v. *PJM Interconnection, L.L.C., et al.*, Civil Action No. 08-cv-3649-NS (E.D. Pa.). The pleadings in the Pennsylvania and Delaware actions were not included in the briefing at the lower court, but a court may take judicial notice of facts outside the record on appeal where the facts involved are "relevant and critical to the matter on appeal." *Colonial Penn Ins. Co.* v. *Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).

at ¶ 6.)  The next day—January 19—PJM seized more than $35 million of the Trading Funds' cash.  (*Id*. at ¶ 7.)  On March 25, 2008, the FERC issued a decision denying PJM's requested rule change, saying that it did "not find it just and reasonable for PJM as a generic matter to impose a tariff provision that automatically takes the profits of one affiliate to offset against the losses of another separate corporate entity."  Order on Tariff Revisions, 122 FERC ¶ 61,279, 62,644 (Mar. 25, 2008).  Nonetheless, PJM refused, and still refuses, to return the funds belonging to the Trading Funds.  (Pennsylvania Am. Compl. at ¶ 7.)

On April 16, 2008, PJM filed the Delaware Action "as agent for its members and derivatively on behalf of Power Edge" against the Trading Funds, Power Edge, and other affiliated entities and persons.  (Delaware Compl. at ¶ 3.)[3] PJM there alleges RICO violations, breaches of fiduciary duty, fraudulent conveyances and breaches of contract.  (*Id*. at ¶¶ 141-202.)  Among other things, PJM there asserts that the Trading Funds and Power Edge are "sham" entities.  (*Id*. at ¶ 1.)

On July 2, 2008, the Trading Funds filed the Pennsylvania Action seeking the return of the more than $35 million that PJM seized.  The Trading

_____

[3]     All citations to the Delaware action will be to the Complaint filed on April 16, 2008.  *See PJM Interconnection, L.L.C.* v. *Mark Gorton, et al*, Civil Action No. 08-216-JJF (D. Del.).

Funds allege that PJM has no legal basis to continue holding their money and set

forth claims for conversion and breach of contract.  (Pennsylvania Am. Compl. at

¶¶ 29-42.)  The courts in the Pennsylvania and Delaware Actions have ordered that

discovery in both actions be coordinated.  *BJ Energy LLC, et al.* v. *PJM*

*Interconnection, L.L.C.*, Civil Action No. 08-cv-3649-NS (E.D. Pa. Nov. 3, 2008)

(Shapiro, J.); *PJM Interconnection, L.L.C.* v. *Mark Gorton*, Civil Action No. 08-

216-JJF (D. Del. Oct. 6, 2008) (Farnan, J.).

ODEC is a member of PJM that publicly supported PJM's actions to

seize the Trading Funds' money.  The Trading Funds believe that ODEC has

documents concerning PJM's handling of Power Edge's default and PJM's

decision to withhold the Trading Funds' monies.  On October 20, 2008, the

Trading Funds served a subpoena on ODEC pursuant to Federal Rule of Civil

Procedure 45 to request production of such documents.  (JA 34-43.)  The Trading

Funds sought documents relating to communications between PJM and its

members—of which ODEC is one—concerning Power Edge's default and PJM's

seizure of the Trading Funds' monies.  (JA 40-43.)  The Trading Funds also sought

documents relating to the decision to limit the Trading Funds' access to PJM's

markets.  (JA 42.)  The documents requested in the subpoena are relevant to

establishing the Trading Funds' claims and defenses in the two actions described

above.  The subpoena requested that ODEC produce documents on November 4, 2008.  (JA 34.)

On October 31, counsel for the Trading Funds granted ODEC an extension of time to respond to the subpoena until November 10.  (JA 79.)  On November 6, counsel for ODEC asked the Trading Funds to pay ODEC $230,000, to be held in escrow, claiming that this amount represented the cost of compliance, most of which consisted of anticipated attorney's fees.  (JA 82.)  ODEC then served its objections to the Trading Funds' subpoena and filed its motion to quash or modify the subpoena on November 10.  (JA 6-21; 22-54.)  ODEC's motion stated that the cost of complying with the subpoena was $240,000.  (JA 44-47.)

The next day, November 11, the Trading Funds' counsel contacted ODEC regarding the subpoena in an attempt to narrow the scope of the subpoena and to address ODEC's concerns.  (JA 88.)  Counsel for the Trading Funds agreed to modify the subpoena substantially by agreeing that ODEC could limit its search for documents to just three custodians, as well as agreeing that the search could be limited to a live e-mail environment only.  (JA 87.)  The Trading Funds also proposed the use of search terms to further narrow the volume of any responsive documents.  (*Id.*)  In response, ODEC lowered its estimate of the cost of compliance to $15,000, but still demanded that the Trading Funds pay that sum to it in advance of any compliance.  (JA 87-88.)  The Trading Funds' counsel

-9-

responded on November 18, saying that ODEC was not entitled to the cost of a lawyer's review of the documents (estimated at $11,500 of the total of $15,000) under Rule 45 and that the Trading Funds were not required to pay into escrow the full cost of compliance.  (JA 87.)  On November 20, ODEC offered to cap its fees at $15,000 and to waive seeking attorney's fees for litigating the scope of the subpoena.  (JA 94.)  ODEC still demanded, however, without citing to any legal authority supporting its demand, that the Trading Funds place $15,000 into escrow before ODEC would comply with the subpoena.  (JA 91.)

On November 24, 2008, the Trading Funds filed with the district court their opposition to ODEC's motion to quash or modify the subpoena.  (JA 55-96.) In their brief, the Trading Funds set out their efforts, as described above, to narrow the scope of the subpoena and reduce the burden on ODEC.  (JA 58-59.)  They explained that their "counsel made a good faith attempt to confer with counsel for ODEC, and proposed a substantial modification of the subpoena in order to address ODEC's concerns."  (JA 59-60.)  In its reply, ODEC argued that it was owed attorney's fees because the subpoena, as it existed before the Trading Funds agreed to narrow it, was unduly burdensome.  (JA 101.)

The district court scheduled a hearing on ODEC's motion for January 9, 2009.  (JA 4.)  As soon as the matter was called, and without permitting any oral argument, the district court issued its decision from the bench granting ODEC's

motion to quash or modify the subpoena and awarding it attorney's fees for the cost of that motion. (JA 140.) After admonishing the parties for requesting that the district court "be a bean counter in a no-brain discovery dispute" (JA 136), the district court stated that under Rule 45(c), "parties are obligated to avoid imposing an und[ue] burden or expense on people subject to their subpoenas." (JA 137.)

The district court noted that "[c]ompliance with this subpoena would have cost ODEC approximately $240,000." (JA 137.) Although the district court paid lip service to the fact that the Trading Funds had agreed to narrow the subpoena significantly, thereby reducing compliance costs to about $15,000 (JA 137-38), it held that a "non party should not be required to pay for the cost of another's litigation, particularly when the party issuing the subpoena stands to gain millions of dollars from the law suit." (JA 138.) Of course, the Trading Funds seek no such "gain"; they are seeking instead their money that PJM unlawfully seized and still holds.

The district court then ordered the Trading Funds "to deposit $15,000 in escrow with ODEC's attorneys to cover [the cost of compliance]." (JA 138.) Without explanation, the district court also granted "ODEC's request for attorney's fees" because "it [was] clear that [the Trading Funds had] not fulfilled their obligations under Rule 45(c)(1)" but provided no reason why the Trading Funds failed to meet that standard. (*Id.*) Indeed, the Trading Funds had done everything

-11-

required by the Rule, and as soon as ODEC complained of the burden imposed by the scope of the subpoena, the Trading Funds had immediately worked with ODEC to narrow substantially its scope and the resulting burden.

The district court concluded by instructing counsel not to "waste a court's time" with discovery disputes.  (JA 139.)  The court also noted that it was "pained" by having "had former law clerks who went with Sullivan and Cromwell [counsel to the Trading Funds], and the other law firm involved" and that he knew "none of them ever learned from [the court] that you waste a court's time on a no-brain discovery matter of this nature."  (*Id*.)  This unexplained anger at counsel for the Trading Funds, who had not been permitted to speak a word, made no sense when it was ODEC that insisted on bringing its motion to quash or modify – despite the fact that the Trading Funds had agreed to a substantial narrowing of the subpoena.

## SUMMARY OF ARGUMENT

The Federal Rules of Civil Procedure expressly provide for discovery of nonparties.  Although Rule 45 protects a nonparty from undue burden or expense, a nonparty is not absolved from bearing any cost of compliance.  The obligation imposed on the party issuing the subpoena is to take reasonable efforts to ameliorate—not eliminate—burden and expense on the nonparty.  Fed. R. Civ. P. 45.  After ODEC complained of the breadth of the subpoena, the Trading Funds

quickly and willingly agreed to substantial modification, thereby greatly

ameliorating the burden and expense of compliance.  ODEC nevertheless

responded with a demand that the Trading Funds prepay all costs of compliance

(including the prepayment of projected attorney's fees), a demand that has no

support in federal law.  The Trading Funds fulfilled their Rule 45(c) duties, and the

district court's sanctions were wholly inappropriate.

## **ARGUMENT**

### **Standard of Review**

To our knowledge, this Court has not addressed the issue of what

standard should be applied in reviewing whether a district court properly awarded

attorney's fees under Rule 45, Fed. R. Civ. P.  Appellants here believe, and the

Ninth Circuit has so held, that the standard should be abuse of discretion.  *Mattel*

*Inc.* v. *Walking Mountain Prod.*, 353 F.3d 792, 814 (9th Cir. 2003).

### **Discussion**

**This Court Should Reverse the District Court's Decision to Impose Sanctions
on Appellants for Serving, and then Agreeing to Narrow, a Subpoena**

The Federal Rules of Civil Procedure expressly provide for the taking

of discovery from nonparties.  Under Rule 34(c), "a nonparty may be compelled to

produce documents and tangible things or to permit an inspection."  Rule 45

provides the mechanism by which parties may compel nonparties to produce

documents.  *See*, *e.g.*, *Guy Chem. Co.* v. *Romaco AG*, 243 F.R.D. 310, 312 (N.D. Ind. 2007) (ordering the nonparty to produce the documents at issue).

Moreover, in situations like this, where the court reviewing the subpoena is different than the court hearing the underlying action, "the general policy favoring broad discovery is particularly applicable." *Jewish War Veterans* v. *Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007); *see also Flanagan* v. *Wyndham Int'l*, 231 F.R.D. 98, 103 (D.D.C. 2005) (cautioning courts in these situations to "err on the side of permissive discovery"); 9 MOORE'S FEDERAL PRACTICE ¶ 45.03.

Although the Rules favor broad discovery, even from nonparties, they also require that the party issuing a subpoena take "reasonable steps" to avoid imposing undue burden or expense on the recipient of a subpoena:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who *fails to comply*.

Fed. R. Civ. P. 45(c)(1) (emphasis added).  The rule does not forbid broad subpoenas, but instead places upon a party who issues a subpoena a duty to avoid imposing an undue burden or expense on the recipient.  The rule expressly provides that the issuing party's actions be judged in light of whether he took "reasonable steps to avoid imposing undue burden or expense" on the subpoenaed

-14-

party.  The district court here wholly ignored the undisputed fact that the Trading Funds promptly took every step to reduce any potential undue burden and expense on ODEC.

In response to ODEC's demands on November 6 for the Trading Funds to limit their subpoena and place $230,000 into escrow, the Trading Funds substantially modified their subpoena after making a good faith attempt to confer with counsel for ODEC.  (JA 87.)  On November 11, the Trading Funds proposed substantial modifications to the subpoena in order to reduce the burden and expense on ODEC, limiting their subpoena to documents from three custodians and to only those documents existing in ODEC's live e-mail environment.  (JA 88.)  The Trading Funds proposed "search terms" to apply to the e-mails belonging to the three custodians, which would allow ODEC to produce only those documents that contained the search terms, further ameliorating the burden on ODEC.  (JA 87-88.)  Indeed, in response to the Trading Funds' proposal, ODEC revised its cost estimate from $230,000 to $15,000, or down more than 93%, demonstrating the Trading Funds' substantial efforts to reduce the burden of compliance.  (*Id.*)  These facts were not taken into account by the district court when it sanctioned the Trading Funds and held that they did not comply with Rule 45(c).  (JA 138.)

-15-

Rule 45(c) does not exempt recipients of subpoenas from bearing any burden or incurring any expense. The rule does not "mean that the requesting party necessarily must bear the entire cost of compliance." *Linder* v. *Calero-Portcarrero*, 180 F.R.D. 168, 177 (D.D.C. 1998) (citation omitted). The subpoenaed party is not guaranteed that its expenses will be zero—only that they not be "undue." Indeed, as this Court not long ago reiterated, the public is entitled to "every man's evidence," *Virmani* v. *Novant Health, Inc.*, 259 F.3d 284, 287 (4th Cir. 2001) (citation omitted), and Rule 45 recognizes that nonparties may be required to bear the expense of providing such evidence as long as the expense is not "undue."

The Trading Funds could not agree to ODEC's demands because of ODEC's insistence that the Trading Funds place $15,000 into escrow to cover ODEC's costs of compliance. Most of that $15,000 was projected payments to lawyers for reviewing the responsive documents collected. (JA 87-88.) There is no basis in law for the recipient of a subpoena to demand payment for such expenses, let alone prepayment. The district court thus erred when it required the Trading Funds to pay ODEC for all such expenses. (JA 138.) The district court

incorrectly interpreted Rule 45 to protect ODEC from any expense, when the Rule merely protects ODEC from undue expense.[4]

The judicial system is not well served by sanctioning a party who has taken reasonable steps to narrow the scope of a subpoena in order to alleviate the burden to the recipient. If a court treats a party who willingly narrows a subpoena identical to one who is unwilling to do so, the incentive to negotiate and limit the subpoena's scope will be greatly reduced. Negotiation will often be useful because the party subject to the subpoena will be in the best position to inform the issuing party how best to narrow the subpoena in light of the internal workings and systems of the party subject to the subpoena.

This Court should hold that a party issuing a subpoena who reasonably negotiates in good faith substantially to limit the burden of the person subject to that subpoena may not be sanctioned under the plain text of Rule 45(c). The Trading Funds complied with the Federal Rules of Civil Procedure by taking "reasonable steps to avoid imposing undue burden or expense" on ODEC. Fed. R.

---

[4] The district court further erred by basing its holding on the fact that the Trading Funds did not "withdraw [their subpoena] when [ODEC] objected to it." (JA 138-39.) The benefits of agreeing to limit a subpoena are the same whether a party undergoes the unnecessary formality of withdrawing the subpoena and issuing a new one or agrees in writing—as the Trading Funds did—to a limitation on the existing subpoena. (JA 87-88.)

Civ. P. 45(c).  The district court thus erred by sanctioning the Trading Funds for

failing to comply with that rule.

## **CONCLUSION**

The district court's January 9, 2009 order should be reversed.

Dated: March 12, 2009                    Respectfully submitted,


                                         By */s/ David B. Tulchin*
                                         David B. Tulchin
Rachel Goldstein                         Matthew S. Fitzwater
GARY & REGENHARDT PLLC                   SULLIVAN & CROMWELL LLP
8500 Leesburg Pike                       125 Broad Street
Suite 7000                               New York, New York 10004
Vienna, Virginia  22182                  (212) 558-4000
(703) 848-2828

-18-

## REQUEST FOR ORAL ARGUMENT

Appellants respectfully request oral argument. The issues raised by plaintiffs' appeal of the district court's judgment are important, and Appellants believe that oral argument will assist the Court in its consideration of those issues.

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No.** 09-1124    **Caption:** BJ Energy, et al. v. PJM Interconnection, LLC

## CERTIFICATE OF COMPLIANCE UNDER FED. R. APP.  P. 32(A)(7)

COUNSEL MUST COMPLETE AND INCLUDE THIS CERTIFICATE IMMEDIATELY BEFORE THE CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT.

1.    This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

☑    Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman).  Do NOT use sans serif typeface such as Arial or any font which does not have the small horizontal or vertical strokes at the ends of letters).  Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point):

MS Word 2007, Times New Roman, 14 point

☐    Twelve point, monospaced typeface (such as Courier or Courier New).  Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, Courier, 12 point):

2.    EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations; and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

☐    _____ Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

☑    3,905 _____ Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief)--*Some word processing programs, including certain versions of Microsoft Word, do not automatically count words in footnotes, making it necessary to manually add the word count from footnotes to obtain the total word count*; OR

☐    _____ Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation may result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief.

/s/ David B. Tulchin                                           3/12/09

Signature of Filing Party                                    Date

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Thomas Wolf
> Joseph M. Rainsbury
> Michele K. Burke
> LeClairRyan
> Riverfront Plaza, East Tower
> 951 East Byrd Street, Eighth Floor
> Richmond, Virginia  23219
> *Counsel for Old Dominion Electric Cooperative*

I further certify that on March 12, 2009, the foregoing document was served via US Mail or 3rd party commercial carrier, to the following:

> Thomas Wolf
> Joseph M. Rainsbury
> Michele K. Burke
> LeClairRyan
> Riverfront Plaza, East Tower
> 951 East Byrd Street, Eighth Floor
> Richmond, Virginia  23219
> *Counsel for Old Dominion Electric Cooperative*

And

> Eric Macey
> Novack & Macey LLP
> 100 North Riverside Plaza
> Chicago, Illinois  60606
> *Counsel for PJM Interconnection, L.L.C.*

_/s/ Catherine B. Simpson_
Counsel Press LLC
1011 E. Main St., Suite LL50
Richmond, VA 23219
804-648-3664

Filing and service were performed by direction of counsel